IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

BRODERICK JOHNSON,

      Petitioner,

v.                                CASE NO. 1:18-cv-199-AW-GRJ

SECRETARY, FL. DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case on September 28, 2018 by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his Alachua County, Florida jury verdict and conviction on one count of carjacking with a firearm or deadly weapon, ECF No. 1, for which he is serving a twenty-five (25) year sentence under the Florida 10/20/Life statute, Fla. Stat. § 775.087. ECF 20-5 at 97. On December 17, 2018, Petitioner filed an Amended Petition. ECF No. 5. On October 28, 2019, the Respondent filed a Response together with relevant portions of the state court record.  ECF No. 20.  Petitioner filed a reply on December 9, 2019.

ECF No. 22. Upon due consideration of the Petition, the Response, and the Reply, it is respectfully recommended that the Petition be denied.[1]

## I. <u>State Court Procedural History</u>

The procedural history of Petitioner's case may be summarized as follows.  Petitioner was charged by an Information in the Eighth Judicial Circuit Court in and for Alachua County, Florida in Case No. 2010CF001759A with a single felony count of carjacking with a firearm or deadly weapon in violation of Fla. Stat. § 812.133(2)(A).  See ECF No. 20-1 at 26-31.  Through court-appointed counsel, Petitioner gave notice of alibi, ECF No. 20-1 at 46, naming his wife along with records custodians of two mobile phone companies. Other pleadings requested orders to the mobile phone companies to produce records and other information that would help establish that Petitioner was not at the scene when the car was stolen.

Petitioner was charged after a man told police that a black male had approached his car, displayed a snub-nose revolver, and demanded that he get out. When he did, the man pressed the gun against his chest and drove off in the car. ECF No. 20-2 at 49-80. A few months later, a witness who knew Petitioner saw the car pull into a parking lot at the apartment

---

[1] Because the Court may resolve the Petition by reviewing the record, the Court has determined that an evidentiary hearing is not warranted.  See Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

complex where Petitioner and his wife lived and contacted police. After Petitioner's arrest, the car's owner picked Petitioner out of a photo line-up as the man who had stolen his car at gun point. See ECF No. 20-1 at 26-29; ECF No. 2 at 133-137; *Id*. at 148-53.

During the two-day trial, the victim testified as follows: In January 2010, he was a graduate student at the University of Florida and owned a 2002 Saturn four-door sedan. ECF No. 20-2 at 50-51. On January 22, 2010, he had dinner with friends in downtown Gainesville and planned to meet his roommates for socializing afterwards. *Id.* at 53-54. After dinner, he walked to his car, which was parked in the Gainesville City Hall parking lot, to wait for his roommates. *Id.* at 55-56. As he approached his car, he noticed a black man ("the man") crossing the street towards him, walking speedily enough that the victim picked up his pace. *Id.* at 56. Not long after the victim got into his car, the man who had followed him came up to the driver-side window and asked the victim what he was doing. *Id.* at 58-59. The victim responded that he was waiting for his friends and then started up the car. *Id.* at 59-60. The man tapped on the car window and displayed a revolver. *Id.* at 60. The man told the victim to get out of the car and he did. *Id.* at 61. The man pressed his revolver against the victim's chest as he moved away from the car door. ECF No. 20-2 at 61-62. The man got into

the car, snickered and drove away. *Id.* at 63.  The victim called 9-1-1 to

report the stolen car. *Id.* at 64. The 9-1-1 recording was played to the jury

at trial. *Id.* at 67-69.   On the recording, the victim gave the car's Michigan

license plate number, his location, the make, model and description of the

car, the direction it was traveling, and a description of the person who took

it.[2]  At trial, the victim also demonstrated on a map where the events

occurred and identified photos of the crime scene. *Id.* at 69-78. Finally, the

victim identified Petitioner in court as the person who had taken his car at

gunpoint, stating that he was "very confident" that Petitioner was the person

who stole his car. *Id*. at 80.

On cross-examination, the victim was asked if the person who stole

his car was wearing eyeglasses at the time, to which the victim responded,

"I don't believe so." ECF No. 20-2 at 99. Defense counsel asked if

Petitioner was wearing eyeglasses in the photo line-up where the victim

identified him as the person who stole the car, to which he responded, "The

photograph had him with glasses on." *Id.* at 101-02. Finally, the victim

---

[2] The victim described the man who stole his car as: "Black male, 5' 10", a hundred and
fifty pounds, wearing a black leather jacket, horizontal, multi-colored striped sweater,
brown stocking cap." ECF No. 20-2 at 69. The victim also testified that he got a good
view of the man's facial features (eyes, nose, mouth, and the side and back of his hair
underneath the stocking cap). *Id.* at 79.

testified that he had never seen Petitioner in person and had identified him only through a photo line-up. ECF No. 20-2 at 102.

After the victim testified, the State called the following witnesses to testify:  First, the Gainesville police officer who responded to the victim's 9-1-1 call at "10:34 p.m."  *Id.* at 112. Second, a maintenance supervisor at the apartment complex where Petitioner lived testified that, in April 2020, he contacted police to report a possible abandoned white Saturn sedan, *id.* at 133, 135, which turned out to be the victim's stolen car.  The maintenance supervisor identified Petitioner and further testified that he knew that Petitioner lived in the complex; that Petitioner parked his bicycle in the apartment complex breezeway; and that management had taken Petitioner's bicycle away for parking in a breezeway. *Id.* at 136-39. Third, the property manager of Petitioner's apartment complex testified that, in April 2010, she became aware of a white Saturn sedan parked in the parking lot; that on one occasion, she saw a black male get out of the car, pull a hood over his head, obscuring his face, and go to the door where Petitioner and his wife lived; and that she believed the man to be Petitioner. *Id.* at 149-54. She also testified that Petitioner "sometimes" wears glasses. *Id.* at 155. Noting that the sedan had Michigan plates and an expired tag,

she asked the Gainesville Police Department to run the tag. *Id.* 156-57.[3]
Gainesville police asked the property manager to alert them if she saw
Petitioner, which she did, and he was arrested. *Id.* at 157-58.

The State introduced testimony and evidence concerning the towing
of the white Saturn sedan from the apartment complex. ECF No. 20-3 at 6-
10; *see also Id.* at 12-14. There was also testimony that of the twenty-four
(24) fingerprints lifted from the stolen car, only one was "of value" but it
could not be positively linked to Petitioner. *Id.* at 27, 35, and 36.

Next, Gainesville Police Detective Joy Robinson testified that she
prepared two photo line-ups and showed them to the victim, and the victim
identified Petitioner as the man who had robbed him. *Id.* at 44-47. Detective
Robinson and two other detectives testified about the details of Petitioner's
arrest on May 11, 2010 and transport to police headquarters, including the
fact that he did not initially open the door when they knocked loudly and
announced that they were police and that he opened the door only after
they said a police dog would be sent in.  *Id.* at 51-56.

The victim was recalled and testified again that Petitioner was the
man who had stolen his car at gunpoint. ECF No. 20-3 at 87-89. He further

---

[3] One of the property manager's duties included checking the parking lot for cars that
did not belong to apartment residents.  ECF No. 20-2 at 145. "Every car has a sticker…
that said… Tree Trail and the year that was expired, the car and the month."  *Id.*

testified that a number of personal items were missing that had been in the car at the time it was stolen and that the car's custom stereo system had been reconfigured for maximum volume and bass boost. *Id.* at 91-93.  He estimated that the car had been driven between 200 and 350 miles during the time it was stolen. *Id.* at 100-101. The State rested.  *Id.* at 105.

Defense counsel moved for judgment of acquittal on the grounds that the property manager's testimony was "weak and circumstantial" and that, without her testimony, the State failed to link Petitioner to the crime.  ECF 20-3 at 108-09. The court denied the motion, finding "sufficient credible evidence" to allow a jury to return a guilty verdict, viewing the case in the light most favorable to the State. ECF 20-3 at 109.

In its case-in-chief, the defense called five witnesses to testify. First, Petitioner's wife's mother identified the cellular service telephone bill for the plan that she and her daughter shared.  *Id.* at 138-39. She further testified that she had purchased a 2002 Mazda for her daughter and son-in-law, *id.* at 139, and that she had never seen Petitioner drive a white Saturn sedan. *Id.* at 142.  On cross-examination, she testified that her daughter and son-in-law were living with her from January 2010 to April 2010 before they moved to the apartment complex where the stolen car was found.  *Id.* at 143. The cellular phone records were admitted into evidence. *Id.* at 149.

Petitioner's wife then took the stand and testified that she was working on the night in question (January 22, 2010).  ECF No. 20-3 at 152. She further testified that the only car she and Petitioner owned at that time was the 2002 Mazda, which Petitioner used when she was at work. *Id.* at 155. She further testified that on January 22, 2010, Petitioner dropped her off and picked her up from work at her first job in the morning and then dropped her off at her second job at 7:00 p.m. *Id.* at 158. She testified that, while at work that evening, she spoke with Petitioner three times between the hours of 10:00 pm and 11:00 p.m., *id.* at 163, and that Petitioner picked her up a little after 1:00 a.m.  *Id.* at 164. She testified about the family's trip to Tallahassee early morning on the 23rd, *id.* at 157-58, and she testified that Petitioner always wears eyeglasses, except at bedtime. *Id.* at 165. Finally, she testified that Petitioner does not own a black leather jacket or multi-colored sweater that the victim described to police. *Id.* at 166.  On cross-examination, the prosecutor focused on the three phone calls, noting that no cellular communications between Petitioner and his wife took place between 10:25 and 10:34 p.m. *Id.* at 181.

Next, a supervisor testified that Petitioner's wife worked the evening of January 22, 2010 from 7:00 p.m. to 1:15 a.m. ECF No. 20-4 at 10.

The defense then introduced and played the videotaped deposition of the assistant vice president for student affairs at Santa Fe College, who is also the director for an organization known as National Achievers, an organization to which Petitioner's child belongs. ECF No. 20-4 at 22. The director testified that Petitioner, his wife, and two of their children attended a National Achiever's trip to Tallahassee on January 23, 2010 (the day after the carjacking), and that the group departed Gainesville at 6:30 a.m. that morning. *Id.* at 23.

Next, the defense called a principal system performance engineer for Verizon Wireless, who testified as an expert witness that it would be "extremely unlikely" for a call made from near the scene of the crime (downtown Gainesville) to utilize a cell tower at 6500 Newberry Road (Oaks Mall area) where one of the calls from Petitioner's cellular phone was recorded.  ECF No. 20-4 at 60.  On cross-examination, the engineer testified that he had no personal knowledge of how the cell tower antennas were functioning between 10:00 and 11:00 p.m. on January 22, 2010, and that it was not impossible for a call made from downtown Gainesville to be picked up by a cell tower in the Oaks Mall area. *Id.* at 66.  Finally, he acknowledged that he could not tell who was actually using the cellular phones at issue during the time in question.  *Id.* at 67-68.

During recess, the trial court held a lengthy charging conference during which no mention of an alibi instruction was made by the defense, the State, or the court. *Id*. 78-101.

After court reconvened, Petitioner testified on his own behalf. On direct examination, he was asked about his two prior felony convictions that occurred 10 years earlier: One, for grand theft after he stole "a few hundred bucks to pay my car note" from a Hardees where he worked; the second, for possession of marijuana and cocaine. ECF No. 20-4 at 147-49. He pled to both charges. *Id.*

Petitioner testified that on the night of January 22, 2010, he drove to pick up his wife at work near the Oaks Mall at 9:45 p.m. and waited there until she got off work at 1:00 a.m. *Id.* at 153-54. He testified that he spoke to his wife three times between 10:00 and 11:00 p.m. *Id.* at 156. He said he was sitting in his car in the parking lot "smoking" the whole time. *Id.* He denied being anywhere near downtown when the crime occurred. *Id.* at 157. He stated that he had never driven a white Saturn, *id.* at 161; that he did not own any clothing described by the victim, *id.* at 158; that he always wears glasses unless he is going to bed, *id*.; and that he had never seen the victim before trial. *Id*. at 162. He also denied ever robbing anyone at gunpoint, and specifically denied stealing the victim's car. *Id.* at 164-65.

On cross-examination, Petitioner testified that his 2002 Mazda had broken down in April of 2010 and stayed out of commission for a while. ECF No. 20-4 at 169-70. He recounted his movements on the day and evening of January 22, 2010. ECF 20-4 at 176-79. He testified that at the time the crime was committed, he was "listening to music and getting high waiting on my wife to get off work." *Id.* at 179.

The defense rested and renewed its motion for judgment of acquittal. *Id*. at 185-86. Defense counsel argued that eyewitness testimony of the victim and property manager were unreliable, and without their testimony there was no evidence establishing that Petitioner committed the crime. *Id*. Defense counsel also argued that it had presented "extremely strong alibi" evidence through the cellular phone records and testimony placing the defendant across town for the entire hour when the incident took place. *Id.* at 186. The judge denied the motion, finding the alibi testimony to be a "classic fact question for the jury." *Id.* at 188.

In rebuttal, the victim testified that the modifications made to the stolen car's sound system would make hip-hop music sound more pleasing, *id.* at 194-95, and that when he got his car back, it smelled of both cannabis and cigarette smoke. *Id*. at 195.

In closing arguments, the prosecutor laid out the circumstantial

evidence presented at trial as well as the eyewitness testimony of the

victim.  ECF No. 20-5 at 6-16. The prosecutor ended her argument with the

following words: "Again I would encourage you that what we say is not

evidence; we are just making arguments to you.  We are arguing the

evidence to you, but please rely on your own recollection as to what you

saw and heard. Thank you."  *Id.* at 16.

Defense counsel argued that the cellular tower records and testimony

made it impossible for defendant to have committed the crime; that the

property manager had not made a positive or reliable identification of the

defendant as the man leaving the stolen car and entering Petitioner's

apartment; that the police found no gun, no key to the car, and no clothing

matching the victim's description; that defendant's fingerprints were not

found on or in the car; and that the defendant had no need to steal a car

since he and his wife shared the Mazda provided to them by Petitioner's

mother-in-law. *Id.* at 16-29.

In rebuttal, the prosecutor stressed the photo line-up identification the

victim made of the defendant; contrasted the seriousness of the victim's

attitude in court with what the prosecutor characterized as the defendant's

appearing to treat the proceedings as "a joke"[4].  ECF No. 5 at 32. The
prosecutor further noted that when Petitioner's Mazda broke down in April
2010, the stolen Saturn appeared in the parking lot at his apartment
complex, to which defense counsel objected. *Id.* at 36. The judge instructed
the jury to "rely on your own recollection." *Id.*[5]  The prosecutor next
addressed Petitioner's alibi defense at some length, suggesting that
Petitioner could have given his phone to someone else, which could
explain the discrepancy between the cellular phone logs and Petitioner's
testimony that he remained at his location from 9:45 p.m. to 1:00 a.m. to
which defense counsel objected twice. ECF No. 20-5 at 44-48 (defense
objections at 45-46 and 47). As to each objection, the judge instructed the
jury to rely on their own recollection. *Id. at* 46 and 47.

After the trial ended, the judge instructed the jury.  One of the
instructions included the following: "This case must be decided only upon
the evidence that you have heard from the testimony of witnesses you have

---

[4] The defendant was scolded by the judge out of the presence of the jury for acting out
in the courtroom. ECF No. 20-5 at 39-44.

[5] The prosecutor also objected during closing arguments for the defense, and the judge
similarly instructed the jury. "As I had indicated to you earlier, the attorneys are giving
argument to you on their construction of the evidence, but the final determiner of the
evidence are you, not the attorneys. So rely on your own recollection."  ECF No. 20-5 at
20-21.

seen and in the form of exhibits in evidence and these instructions." *Id.* at

62.  The jury instructions contained no alibi charge.  *See id.* at 50-70.

On June 16, 2011, the jury found Petitioner guilty as charged, ECF

No. 20-5 at 73-76, and the court sentenced him to twenty-five (25) years in

prison under Florida's 10/20/life statute. *Id.* at 101-02.

On June 17, 2011, Petitioner appealed his conviction and sentence to

the Florida District Court of Appeal for the First Circuit (First DCA). ECF No.

20-1 at 86. On October 24, 2011, defense counsel filed an *Anders*[6] brief

with the First DCA, stating that counsel could not find any appealable

issues as to the conviction or the sentence, ECF No. 20-7 at 1-23, and

asked the court to allow Petitioner to proceed on appeal *pro se*. ECF No.

20-8.  On November 2, 2011, the First District Court of Appeal, 1D11-3270,

allowed Petitioner to file a *pro se* brief. In its order, it informed Petitioner

that he had thirty (30) days to serve an initial brief and that failure to do so

would result in his appeal being decided without one.

> Appellant in proper person is granted 30 days from the date of
> this order to serve an initial brief. Failure to timely serve a pro
> se brief will result in this case being presented to the court
> without benefit of a pro se brief.

---

[6] *Anders v. California*, 386 U.S. 738, 741-42 (1967). Under *Anders*, if a criminal
defendant insists on pursuing an appeal, but appointed counsel believes the appeal to
be without merit, counsel must thoroughly review the record and the law, file a brief
detailing that review, explain why an appeal would be frivolous, and move to withdraw
as counsel. Faced with an *Anders* brief, the appellate court undertakes its own review.

*Id*. at 3. Petitioner did not file a *pro se* brief.  On July 11, 2012, the First DCA issued a *per curiam* opinion, affirming Petitioner's conviction and sentence. ECF No. 20-10 at 1; *see Johnson v. State*, No. 1D17-1261, 2018 Fla. App. LEXIS 3893 (Fla. DCA 1st Mar. 21, 2018)[7].  Petitioner moved for rehearing on July 27, 2012, *id*. at 2, which the court denied on August 31, 2012. *Id.* at 8. Mandate issued on September 19, 2012.  *Id. at* 10.[8]

On September 29, 2013, Petitioner filed a Motion for Post-Conviction Relief under Florida Rule of Criminal Procedure 3.850 ("Rule 3.850"), alleging twenty grounds, only some of which are relevant here. ECF No. 20-14 at 1-47.  In Ground 1, Petitioner alleged that trial counsel was ineffective for failing to request a jury instruction on alibi. *Id.* at 1. Petitioner argued that had the jury been given an alibi instruction, the evidence the defense adduced concerning the apparent proximity of Petitioner's cellular phone to an antenna far away from the crime scene coupled with Petitioner and his wife's testimony that he was miles away at the time the car was

---

[7] Pursuant to 11th Cir. R. 36-2, unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.

[8] On January 28, 2013, Petitioner filed a Motion to Correct Illegal Sentence pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure, ECF No. 20-11 at 22-30, which was denied. *Id.* at 31.  Petitioner moved for rehearing, *id.* at 40-44, which was denied. *Id.* at 45. Petitioner appealed on April 1, 2013. *Id.* at 85

stolen, would have resulted in his acquittal.  *Id.* at 13, 15-16. In Grounds 4

and 5, Petitioner alleged that trial counsel was ineffective for failing to make

legally sufficient motions for judgment of acquittal. *Id.* at 3. Ground 4

alleged that the State had no evidence to corroborate the victim's

eyewitness testimony. *Id.* at 12, 20-21. Ground 5 argued that the State

failed to prove all of the elements of carjacking.  *Id.* at 12, 21-22. In Ground

6, Petitioner alleged that trial counsel was ineffective for failing to file a

motion for a new trial that challenged the weight and sufficiency of the

evidence, and that had counsel done so there is a reasonable probability

that the motion would have been granted. *Id.* at 4, 23-24.  In Ground 7,

Petitioner argued that trial counsel should not have delved into his prior

convictions, permitting the State to argue his attitude toward criminal

behavior during its closing argument.  *Id.* at 3-4, 25-26.  In Grounds 9

through 11, Petitioner alleged that trial counsel should have objected to

comments the prosecutor made in opening statement and closing

argument. *Id.* at 4-5, 30-34. In Ground 12, Petitioner alleged counsel was

ineffective for failing to object to what Petitioner argued was bolstering the

victim's testimony.  *Id.* at 5, 34-36. In Ground 19, Petitioner argued that

counsel should have investigated and interviewed the victim regarding

inconsistent statements made about his description of the assailant.  *Id.* 7, 43-45.

The state postconviction court denied Petitioner's motion.  ECF No. 20-13 at 73-87. As to each of ineffective assistance grounds raised in the instant Amended Petition, the judge found as follows:

In denying Ground 1, the judge noted that Petitioner acknowledged that alibi evidence was put on by counsel and that the alibi was argued during closing, but nevertheless he claimed prejudice because had the jury been instructed on the alibi, it would have acquitted him.  The judge found the claim to be "without merit." ECF No. 20-13 at 77. First, under *Sanders v. State*, 946 So.2d 953, 960 (Fla. 2006), "'the possibility of a jury pardon cannot form the basis for a finding of prejudice.'" And, under *James v. State*, 973 So.2d 528, 529 (Fla. 5th DCA 2007), a claim based on speculation as to a jury pardon may be summarily denied.[9] ECF No. 20-13 at 77. Finally, the judge found that this ineffective assistance claim was really an attempt to reargue the sufficiency of the evidence, which is not a cognizable claim in postconviction proceedings.  *Id.*

---

[9] "To prevail on an ineffective assistance of trial counsel claim, a defendant in a Rule 3.850 motion must establish a substantial deficiency in counsel's performance which so affected the proceeding that confidence in the outcome is undermined. *See Dufour v. State*, 905 So.2d 42 (Fla. 2005); *Maxwell v. Wainwright*, 490 So.2d 927 (Fla. 1986), cert. denied, *Maxwell v. Florida*, 479 U.S. 972, 107 S.Ct. 474, 93 L.Ed.2d. 418 (1986)." *James*, 973 So.2d at 529.

In denying Grounds 4, 5, and 6 the judge found that the ineffective assistance claims were really an argument that the evidence against him was insufficient, and thus the claims were not cognizable under Rule 3.850. *Id.* at 78-79.

In denying Ground 7, the judge found that trial counsel reasonably expected the State to impeach Petitioner with his two prior felony convictions and thus followed the common practice of putting that information before the jury before the State could do so. ECF No. 20-13. at 79-80.  Moreover, at trial, defense counsel emphasized that the crimes were committed ten (10) years ago, that they were relatively minor offenses that were resolved by pleas, and that Petitioner was only 18 or 19-years-old at the time. *Id.*  The judge noted that "anticipatory rehabilitation" of a criminal defendant with a felony record is "'appropriate, common and not deficient….'" in such circumstances, citing *Collins v. State*, 200 So.3d 163, 165 (Fla. 5th DCA 2016) and *Lawrence v. State*, 520 So.2d 519, 520 (Fla. 1986). *Id.*  In addition to finding no deficient performance of counsel, the judge found no prejudice because the State made only "two passing comments" about the prior convictions and Petitioner "failed to show that counsel's inquiry into the nature of those convictions was so prejudicial that there is a reasonable probability this information affected the outcome of

his trial." ECF No. 20-13 at 81. Finally, the judge noted that Petitioner's in-court behavior was more of the State's focus in closing than were his prior convictions. *Id.*

In denying Ground 9, the judge noted that none of the comments made by the State during opening were objectionable under Florida law because they merely set out what the State expected the evidence would show, including reasonable inferences to be drawn from the evidence. ECF No. 20-13. The judge also noted that wide latitude is given to counsel to argue witness credibility to the jury during closing argument and that no comment Petitioner challenged was improper. *Id.* at 81-82. Furthermore, the jury was reminded that what the lawyers said is not evidence, so there was no deficient performance of counsel or prejudice. *Id.* at 82.

In denying Ground 10 (a claim that counsel should have moved for a new trial based on the State's closing argument), the judge again noted that counsel is given wide latitude in closing, the State's closing comments were not improper, and thus the claim was "without merit." ECF No. 20-13 at 82. "Counsel did not err by failing to move for a new trial" based on the State's arguments as to the credibility of witnesses. *Id.*

In denying Ground 11, the judge relied on the same authorities to support the denials of Grounds 9 and 10, finding that Petitioner "fail[ed] to show either error by counsel or prejudice." *Id.* at 82-83.

In denying Ground 12, the judge relied on the same authorities to support the denials in Grounds 9 through 11, finding that Petitioner "fail[ed] to show either error by counsel or prejudice."  ECF No. 20-13 at 83

In denying Ground 19, the judge found that during trial, "the victim testified that he immediately recognized [Petitioner] in the photo lineup; and he testified that he recognized [Petitioner] in the courtroom as the person who carjacked him."  *Id.* at 86. The judge found that Det. Robinson backed up that testimony, and that "law enforcement did not use and unnecessarily suggestive procedure in obtaining the victim's out-of-court identification." *Id*. at 87.  The judge also found that "[t]he victim's 9-1-1 call supports the fact that he immediately relayed identifying factors of the perpetrator after the offense had occurred . . .  Thus, even if counsel had challenged the out-of-court identification by filing a motion to suppress, the motion to suppress would have been denied." *Id.* As a result, Petitioner failed to show either error by counsel or prejudice. *Id.*

Petitioner appealed the denial of postconviction relief to the Florida District Court of Appeal for the First Circuit (First DCA), which affirmed

without written opinion on March 21, 2018. ECF No. 20-16 at 1-2. On April

3, 2018, Petitioner moved for rehearing. *Id*. at 3-5, which the court denied

on May 3, 2018.  *Id*. at 6. Mandate was issued on May 24, 2018. *Id.* at 7.

While the Rule 3.850 motion was pending, Petitioner field a Petition

Alleging Ineffective Assistance of Appellate Counsel, ECF No. 20-17, which

was denied on the merits on November 13, 2013. ECF No. 20-18 at 1.

Petitioner's Motion for Rehearing, *id*. at 2-12, was denied on January 8,

2014. ECF No. 20-18 at 13. Petitioner filed a second motion for rehearing,

*id.* at 13-24, which was also denied. *Id.* at 25.

The instant federal petition was filed in this Court on September 28,

2018. ECF No. 1. In his Amended Petition filed on December 17, 2018,

Petitioner asserts the following ineffective assistance of counsel claims for

relief: (1) ineffective assistance for failure to request an alibi jury instruction;

(2) ineffective assistance for failure to object to the prosecutor's

inflammatory comments during closing argument; (3) ineffective assistance

for failure to object to the prosecution's bolstering the credibility of a

witness during closing; (4) ineffective assistance for failure to file a motion

for a new trial; (5) ineffective assistance for failure to raise a proper motion

for judgment of acquittal; (6) ineffective assistance for failure to preserve

the issue of whether the state proved all of the elements of the offense

beyond a reasonable doubt; (7) ineffective assistance for questioning

Petitioner about the illicit nature of his prior felony convictions; and (8)

ineffective assistance for failure to investigate and/or interview the victim

regarding his identification of Petitioner as the person who carjacked him.

ECF No. 5 at 9-19, and 22-25.  Respondent filed its Response on October

28, 2019. ECF No. 20. Petitioner filed a Reply on December 9, 2019. ECF

No. 22.

Respondent concedes that the Petition is timely and that Petitioner

exhausted his state court remedies with respect to his ineffective

assistance of counsel claims. *See* Response, at 18.

## Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state

prisoner's application for a writ of habeas corpus based on a claim already

adjudicated on the merits in state court unless that adjudication "resulted in

a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding."  Under §

2254(e)(1), "a determination of a factual issue made by a State court shall

be presumed to be correct," and the petitioner "shall have the burden of

rebutting the presumption of correctness by clear and convincing

evidence."  "'[A] state-court factual determination is not unreasonable

merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow,* 571 U.S. 12*,* 18 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 571 U.S. at 18-19 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id*.

This highly deferential standard carries special force in habeas cases asserting ineffective-assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[10] —a claim state courts have now adjudicated in countless

---

[10] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the

criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. at 15-16 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  "'If this standard is difficult to meet'—and it is---'that is because it was meant to be.'" *Id*. at 16 (quoting *Harrington*, 562 U.S. at 102).  "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy."  *Id*. (quoting *Harrington*, 562 U.S. at 102).

Further, when reviewing state-court decisions on habeas review, if a state appellate court issues a silent affirmance, "the federal court should

_____

prejudice prong).

'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, ___ U.S. ___, 138 S.Ct. 1188, 1192 (2018).

## Discussion

In the Amended Petition, Petitioner claims that he was deprived of his Sixth Amendment right to effective assistance of counsel at trial on eight grounds.  ECF No. 5.  Applying *Strickland*, the postconviction state court analyzed each of Petitioner's ineffective assistance claims as follows:

> If the movant does not point to prejudice the court need not make a ruling on the performance component, and vice versa. *Johnson v. State*, 593 So.2d 206, 209 (Fla. 1992). Furthermore, when alleging ineffective assistance of counsel a defendant must plead unprofessional error and prejudice with specificity." *See Smith v. State*, 445 So.2d 323, 325 (Fla. 1983); *see also Cunningham v. State*, 748 So.2d 328, 330 (Fla. 4th DCA 2000) (citing *Knight v. State*, 394 So.2d 997, 1001 (Fla. 1981) (when claiming deficient performance, "the specific omission or overt act upon which the claim of ineffective assistance of counsel is based must be detailed in the appropriate pleading").  It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 466 U.S. at 693.  The defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 698.
>
> ECF No. 20-13 at 76.

### *Ground 1: IAC for Failure to Seek Alibi Jury Instruction*

Petitioner's first ineffective-assistance claim is based on the argument that trial counsel's failure to seek an alibi instruction to the jury resulted in his conviction.  ECF No. 5 at 9. The postconviction court found this claim to be "without merit." ECF No. 20-13 at 77.

> As Defendant indicates in his motion, the defense put on an alibi defense at trial. In support of that defense, defense counsel called an alibi witness (Defendant's wife) and presented expert testimony and evidence regarding cell phone technology which purportedly placed Defendant at a different location at the time of the offense. According to Defendant, although counsel put on evidence of an alibi, and argued Defendant could not have committed the offense because of his purported alibi, but for counsel's failure to request an alibi jury instruction, he would have been acquitted by the jury.

> *Id.*

> Under Florida law, "the possibility of a jury pardon cannot form the basis for a finding of prejudice."  *Sanders v. State* 946 So.2d 960 (Fla. 2006). Furthermore, "an ineffective assistance of counsel claim may be summarily denied if the only allegation is that the jury was unable to exercise its pardon power."  *James v. State*, 973 So.2d 528, 529 (Fla. 5th DCA 2007). ECF No. 2013 at 77.[11]

> *Id.*

There is no dispute that defense counsel failed to request an alibi jury instruction. The Florida Pattern Jury Instruction on Alibi states:

---

[11] The postconviction court also found that Petitioner's claim was procedurally barred because it really amounted to a challenge to the sufficiency of the evidence. ECF No. 20-13 at 77.

> An issue in this case is whether the defendant was present
> when the crime was committed.  If you have a reasonable
> doubt that defendant was present at the scene of the alleged
> crime, it is your duty to find the defendant not guilty. 3.6(i) Alibi.

The Fourth District Court of Appeal has stated that defense counsel's

failure to request a jury instruction on excusable homicide "has been

deemed to be an 'unreasonable omission which severely prejudiced his

client's case' where the error complained of 'negated the only defense put

forth by trial counsel.'" *Platt v. State*, 697 So.2d 989, 991 (Fla. 4th DCA

1997) (citation omitted); *see also Matthis v. State*, 973 So.2d 1153, 1157-

58 (Fla. 1st DCA 2006) (finding that the trial court erred in concluding that

counsel's performance was not insufficient "because appellant presented

evidence supporting a self-defense theory at trial [so] he should have been

entitled to jury instructions on the justifiable use of both deadly and non-

deadly force had both instructions been requested.").

Neither of these cases, however, address the question of whether

failure to request an alibi jury instruction constitutes ineffective assistance

of counsel such that federal habeas corpus relief is warranted.  In *Cesar v.

McNeil*, 09-60479-cv-Altonga, 2010 U.S. Dist. LEXIS 72472, at *20-22,

2010 WL 2845034 (S.D. Fla. May 11, 2010), the court concluded that it did

not.

Generally, alleged errors in a state court's jury instructions form no basis for federal habeas corpus relief unless they are so prejudicial as to render the trial fundamentally unfair. *Jones v. Kemp*, 794 F.2d 1536, 1540 (11th Cir. 1986), cert. denied, 479 U.S. 965, 107 S.Ct. 466, 93 L.ED.2d 411 (1986); *Bryan v. Wainwright*, 500 F.2d 1108 (5th Cir. 1979); *Please v. Wainwright*, 441 F.2d 56 (5th Cir. 1971).[12] A jury charge is adequate if, viewed as a whole, it fairly and correctly states the issues and the law. *United States v. Russel*, 717 F.2d 518, 521 (11th Cir. 1983). Where the error alleged is an incomplete or omitted instruction, a habeas corpus petitioner bears an especially heavy burden, because an incomplete or omitted instruction is less likely to be prejudicial than an overt misstatement of the law. *Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). The Eleventh Circuit has held that such an instruction must be given when the requested instruction 1) is correct, 2) is not substantially covered by the court's charge to the jury, and 3) deals with some point in the trial so important that failure to give the requested instruction would seriously impair the defendant's ability to conduct his defense. *United States v. Vicaria*, 12 F.3d 195, 198 (11th Cir. 1994) (citing United States v. Camejo, 929 F.2d 610, 614 (11th Cir. 1991)).

*Cesar*, 2010 U.S. Dist. LEXIS 72472, at *20.

Therefore, this Court must determine whether counsel's failure to request the alibi jury instruction gave rise to a constitutional violation.[13]

---

[12] In *Jones*, the Eleventh Circuit affirmed the district court's denial of habeas corpus relief finding "no constitutional error in the failure to instruct on alibi, particularly since Jones did not request such an instruction…. The court gave proper instructions on the elements of the crime and burden of proof, and Jones has demonstrated no prejudice from the absence of a specific alibi instruction." *Jones,* 794 F.2d at 1540 (internal citation omitted).

[13] It is possible that Counsel had a reasonable strategic tactic for not requesting the alibi jury instruction. However, a postconviction finding that counsel made a strategic decision should be made only after an evidentiary hearing. "[O]nce a defendant makes

While the jury was not specifically instructed on the theory of alibi, because counsel never requested the specific instruction, the court's charge when viewed as a whole correctly stated the issues and law and was adequate. *See United States v. Russell*, 717 F.2d 518, 521 (11th Cir. 1983); *see also Cesar v. McNeil*, No. 09-60479-cv-Altonaga, 2010 U.S. Dist. LEXIS 72471 (May 11, 2010) (recommending denial of ineffective assistance claim based on counsel's failure to request alibi instruction as record as a whole indicated that the trial court's jury charge correctly stated the issues and the law and was adequate), report and recommendation accepted by, Writ of habeas corpus denied, at *Cesar v. Mitchell*, 2010 U.S. Dist. LEXIS 72437 (S.D. Fla. Jul. 19, 2010).

Review of the record in this case reveals that the sole defense presented by Petitioner at trial was an alibi defense as suggested by trial counsel at the start of the case in his opening statement. *See e.g.,* ECF No. 20-2 at 41-48. In support of this defense, trial counsel called Petitioner's

---

the required showing under *Strickland*, an objective basis for trial counsel's action must be found within the record to justify counsel's performance and thereby rebut the defendant's claim on the ground that counsel's conduct was strategic… If the record itself does not provide such a justification, a court has no choice but to require the State, as well as the attorney whose performance is in question, to answer the defendant's allegations." *Childers v. State*, 782 So.2d 513, 519 (Fla. 1st DCA 2001) (noting that an action taken may have been counsel's strategy, but "such a finding generally should be made only after an evidentiary hearing." *See Porter v. State*, 626 So.2d 268 (Fla. 2nd DCA 1993).").  No evidentiary hearing was conducted in the instant case.

wife who testified that she was at work on the night in question and that she

spoke with Petitioner three times by phone during the time when the

alleged crime took place. ECF No. 20-3 at 180-82.  Also, at trial, a Verizon

system engineer testified that it was "extremely unlikely" that a cellular

tower near the Oaks Mall could have recorded a phone call from

Petitioner's cell phone number had Petitioner placed the call from at or near

the crime scene downtown.  ECF No. 20-4 at 60.  On cross examination,

the engineer testified that he had no personal knowledge of how the cell

tower antennas were functioning between 10:00 and 11:00 p.m. on January

22, 2010, and that it was not impossible for a call made from downtown

Gainesville to be picked up by a cell tower in the Oaks Mall area. *Id.* at 66.

He also acknowledged that he could not tell who was actually using the

cellular phones at issue during the time in question.  *Id.* at 67-68.  During

closing argument, trial counsel argued to the jury that Petitioner was not the

assailant and that the state had failed to prove beyond a reasonable doubt

that he had committed the crimes charged. ECF No. 20-5 16-29.

The jury was properly and fully instructed as to the presumption of

innocence and the burden of proof in a criminal case. *Id*. at 51, 54, 56, 57,

and 60. The jury was also expressly instructed that Petitioner is presumed

innocent, and they should find Petitioner not guilty of the crimes charged if

the state had not proved the case beyond a reasonable doubt. *Id*. at 59.

Additionally, the court instructed the jury regarding the reliability of the

evidence, weighing the evidence and the credibility of witnesses. *Id*. at 60-

62. The trial court clearly and correctly instructed the jury that it could

believe or disbelieve all or any part of the evidence presented or the

testimony of any witness. *Id*. Accordingly, the jury was instructed that they

should find Petitioner not guilty if they did not believe the testimony of the

state's witnesses or, the converse, if they believed the testimony of the

defense's alibi witnesses. It is generally presumed that jurors follow their

instructions. *See, e.g.*, *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct.

1702, 95 L.Ed.2d 176 (1987).

The jury adjourned at 5:30 p.m. and reconvened at 7:37 p.m. with a

guilty verdict on the carjacking with a firearm offense. ECF No. 20-5 at 72-

73.

The evidence admitted at trial of Petitioner's guilt was very compelling

and included eyewitness testimony.  In light of the instructions actually

given to the jury and the trial transcript, it is evident that the jury was aware

that it should find Petitioner not guilty if there was any reasonable doubt he

was present at the scene.  In other words, the jury was instructed and

therefore knew that if it were to find the defense witnesses credible and the

alibi defense believable, Petitioner should be acquitted of the offenses charged. Apparently, the jury rejected the defense presented and instead believed the strong testimony of the state witnesses, as was its prerogative. Thus, Petitioner cannot demonstrate failure to provide the alibi instruction resulted in the guilty verdict. Consequently, he has failed to demonstrate that he received constitutionally ineffective assistance of trial counsel with regard to the jury instructions given in this case.

Even presuming Petitioner satisfied the first prong of *Strickland* (counsel's failure to request an alibi instruction was outside the range of competency demanded of counsel in criminal cases), he has failed to show that but for counsel's failure to seek an alibi jury instruction, that there is a reasonable probability that he would have been acquitted. *See Walker v. Sec'y, Fl. Dep't of Corr.*, 3:16-cv-1428-J-34JBT, 2019 WL 1676207, at *14 (M.D. Fla. Apr. 17, 2019) (concluding that Petitioner "cannot demonstrate prejudice [for ineffective assistance of counsel claim on grounds that counsel failed to request an alibi jury instruction] because even if the alibi instruction were read, there is no reasonable probability the outcome of the trial would have been different.").

The victim in the case identified Petitioner as the person who had carjacked him at gunpoint both in a photo line-up and at trial.  The stolen

vehicle was found at the apartment complex where Petitioner lived. In denying defense counsel's Motion for Judgment of Acquittal at the close of trial, the trial court found that Petitioner's alibi testimony presented a "classic fact question" as to which of the parties' witnesses the jury would believe.  ECF No. 20-4 at 189.

In a § 2254 proceeding, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Mirzayance,* 556 U.S. at 123 (quoting *Schriro,* 550 U.S. at 473). The state court has wide latitude to reasonably determine that a defendant has not satisfied this doubly deferential *Strickland* standard. *See Mirzayance*, 556 U.S. at 123.

Petitioner has failed to show that the state court's rejection of his ineffective assistance claim on Ground 1 is contrary to, or an unreasonable application of *Strickland.*  Petitioner, therefore, is not entitled to federal habeas relief.

### Ground 2: IAC for Failure To Object to Improper Comments During the State's Closing Argument

Petitioner's second ineffective assistance claim is based on the argument that trial counsel's failure to object to "improper comments" made by the prosecutor during closing argument, which "shifted the burden of

proof," "disallowed any immediate cure or further review" of the comments.

ECF No. 5 at 11.  Petitioner does not provide the comments about which

he complains in his Amended Petition. *See* ECF No. 5. In his Reply,

however, he sets forth six comments made by the prosecutor during

closing argument that he contends are "improper and inflammatory".  ECF

No. 22 at 4.

(1) But here's what I have to prove to you. Basically, he meant to steal the vehicle. So he took the car. He used violence and assault, and he intended to steal it.
(2) Broderick Johnson, this is a joke for him, laughing smirking, and joking, and ha-ha, okay. I took myself a little loan from my employer. Is that behavior appropriate for someone who's sitting in his shoes, for someone who's been accused of a felony? He had two in the past. This isn't his first round go round. He's obviously very comfortable with this process. This is a game to him ladies and gentlemen. This was not a game to the victim. This was not Russian Roulette.
(3) It all adds up. He took the car because he wanted wheels.
(4) As I was saying before ladies and gentlemen, this is not a game that the victim is playing, not a game. Not a game the state is playing, but the defense apparently thinks this is a game. The defendant thinks it's a game.
(5) Ladies and gentlemen, Broderick's not believable. This is a game to him, laughing and joking with you guys. It wasn't a big deal for him to take that loan. It wasn't a big deal for him to take that car. Laportia [Petitioner's wife] and Buelah [Petitioner's moth-in-law] are not believable. They are not credible. They are sticking up for him. That family sticks together. They cover for each other.
(6) The state has given you all of this, all of these circumstances, all of these pieces of the pie. And you have three phone calls that didn't come from his phone, and a defendant that is not acting appropriately from the chair he's sitting in because he is trying to game you, and you

shouldn't be gamed. The victim didn't think this was funny when he had that cold steel gun in his chest. Those minutes were so important to him. He is never going to forget what he saw. He is not mistaken. He is not playing games; the defendant is playing games. He's playing Russian Roulette. He didn't pull the trigger, you should. Please find him guilty. Thank you.

ECF No. 22 at 5-7.

The postconviction court found that "[n]one of the statements by the State that Defendant cites to are objectionable" in that the State's opening reflected what it expected the evidence to show, *Williams v. State*, 947 So.2d 517, 519 (Fla. 3rd DCA 2006), and "wide latitude is permitted in arguing to a jury," *Breedlove v. State,* 413 So.2d 1, 8 (Fla. 1982). ECF No. 20-13 at 81. Thus, counsel did not err in failing to object to the statements. *Id.* The postconviction court concluded that "Defendant fails to show either error by counsel or prejudice." *Id.* at 82.

It is well-settled that improper jury argument by the prosecution violates a defendant's constitutional right to a fair trial in some circumstances. *See, e.g., Cronnon v. State*, 587 F.2nd 246, 251 (5th Cir. 1978). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Davis v. Kemp*, 829 F.2d 1522, 1527 (11th Cir. 1987). The Court applies a two-step process in reviewing such a

claim: (1) the Court considers whether the argument was improper; and (2) whether any improper argument was so prejudicial as to render the trial fundamentally unfair.  *Id*. at 1526.  Thus, "'[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"   *Id*. at 1526-27 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).  A trial is fundamentally unfair if there is a reasonable probability that but for the prosecutor's improper remarks, the outcome of the trial would have been different. *Williams v. Kemp*, 846 F2d 1276, 1283 (11th Cir. 1988).  This Court concludes that the State's comments simply do not rise to the level of a federal constitutional violation necessary to support federal habeas relief.

In a § 2254 proceeding, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Mirzayance,* 556 U.S. at 123 (quoting *Schriro*, 550 U.S. at 473).

Petitioner has failed to show that the state court's rejection of his ineffective assistance claim on Ground 2 is contrary to, or an unreasonable application of *Strickland.*  Petitioner, therefore, is not entitled to federal habeas relief.

### *Ground 3: IAC for Failure to Object to Bolstering of Witness During the State's Closing Argument*

Petitioner's third ineffective assistance claim is based on the

argument that trial counsel's failure to object to the prosecutor's bolstering

the victim's credibility during closing argument "shifted the burden of proof."

ECF No. 22 at 9.  The two comments challenged are as follows: [14]

> (1) Did the witness have the same interest in how this case should be decided? The victim has his car back now. His life isn't going to change one way or the other with this.
> (2) The victim was dead serious when he testified. I would even say he was professional when he testified; that's my characterization. Broderick Johnson, this is a joke for him.
>
> ECF No. 22 at 10.

The postconviction court concluded that "[n]one of the argument

which Defendant cites to was improper. For this reason, Defendant fails to

show either error by counsel or prejudice."  ECF No 20-13 at 83:

> "The State is allowed to argue reasonable inferences from the evidence and to argue the credibility of witnesses…so long as the argument is based on the evidence."  *Miller v. State,* 926 So.2d 1243, 1254-55 (Fla. 2006).
>
> *Id*.

---

[14] Petitioner also repeats his challenge to comments (4), (5), and (6), that the court has reviewed under Ground Two above.

This Court finds that the State's comments simply do not rise to the level of a federal constitutional violation necessary to support federal habeas relief.

As stated earlier, in a § 2254 proceeding, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Mirzayance,* 556 U.S. at 123 (quoting *Schriro*, 550 U.S. at 473). The state court has wide latitude to reasonably determine that a defendant has not satisfied this doubly deferential *Strickland* standard. *See Mirzayance*, 556 U.S. at 123.

Petitioner has failed to show that the state court's rejection of his ineffective assistance claim on Ground 3 is contrary to, or an unreasonable application of *Strickland.* Petitioner, therefore, is not entitled to federal habeas relief.

### Ground 4: IAC for Failure to File Motion for New Trial

Petitioner's fourth ineffective assistance claims is based on the argument that trial counsel failed to file a motion for a new trial, challenging the weight and sufficiency of the evidence, and that but for that failure, the "result of the proceeding would have been different." ECF No. 22 at 12.

The postconviction court treated this claim as one challenging the "sufficiency" of the evidence, rather than one alleging the ineffectiveness of counsel in failing to file a motion for new trial raising the "weight" of the evidence, as was alleged in the post-conviction motion. ECF No. 20-13 at 79.  In treating the claim as challenging the sufficiency of the evidence, the post-conviction court found the claim procedurally barred under Rule 3.850. *Id.*

The issue of sufficiency of the evidence is raised by a motion for judgment of acquittal under Florida Rule of Criminal Procedure 3.380, and defense counsel so moved after the State rested and at the close of the evidence.[15]  The issue of weight of the evidence to support the verdict is raised under Florida Rule of Criminal Procedure 3.600(a)(2).  *See Carr v. Jones*, Case No. 1:15cv227-WTH/CAS, 2017 U.S. Dist. LEXIS 218096, at *31 (N.D. Fla. June 6, 2017). "A motion for a new trial raises the issues of whether the 'verdict is contrary to law or the weight of the evidence.'"  *Id.* (citing Fla. R. Crim. P. 36.00(a)(2)).

---

[15] The record reflects that trial counsel made a motion for judgment of acquittal after the state rested, ECF No. 20-3 at 108, and at the close of the evidence, ECF No. 20-4 at 185-86, and that the trial court denied both motions. ECF No. 20-3 at 109; ECF No. 20-4 at 188.

"Petitioner cannot rely on a *per se* rule of ineffective assistance for failing to file a motion for a new trial." *Carr*, 2017 U.S. Dist. LEXIS at *32 (citing *Jewson v. Crosby*, No. 3:04cv71-MCR/MD, 2005 U.S. Dist. LEXIS 32978, 2005 WL 1684209, *7 (N.D. Fla. Mar. 11, 2005), report and recommendation adopted as modified, No. 3:04cv71-MCR/MD, 2005 Dist. LEXIS 32975, 2005 WL 1692617 (N.D. Fla. Jun. 16, 2005) and *Manley v. State*, 605 So.2d 1327, 1328 (Fla. 2d DCA 1992) (affirming denial of relief on ineffective assistance claim based on attorney's failure to file timely motion for new trial because defendant failed to show likelihood that a new trial would have been ordered)).  Petitioner has not demonstrated a reasonable probability that a new trial would have been ordered and has therefore failed to demonstrate prejudice. Indeed, because the trial court found that the Petitioner's alibi testimony was "a classic fact question for the jury," it is highly unlikely that the trial court would have granted a motion for a new trial. ECF No. 20-4 at 188.

Petitioner has thus failed to show that the state court's rejection of his ineffective assistance claim on Ground 4 is contrary to, or an unreasonable application of *Strickland.*  Petitioner, therefore, is not entitled to federal habeas relief.

### *Grounds 5: IAC for Insufficient Motion for JOA*

Petitioner's fifth ineffective assistance claim is based on trial counsel's filing of an "insufficient motion" for judgment of acquittal, and that but for that failure, the "result of the proceeding would have been different." ECF No. 22 at 13.  Petitioner fails to delineate for the court what aspects of the motions were deficient.  The postconviction court treated these claims as ones challenging the "sufficiency" of the evidence which were procedurally barred under Rule 3.850.  ECF No. 20-13 at 78-79.

At trial, defense counsel made two motions for judgment of acquittal; the first, after the state rested, and the second at the close of the evidence. The trial court denied both motions.

In the first motion, counsel argued the following:

Judge, the defense moves for a judgment
of acquittal at this point.

Judge, the grounds for our motion would be as
follows: The sole identifying factor here is based on the
testimony of Mireya Evans. We would argue at this point
that her testimony, based on what she said to the police,
what she said at her deposition, and even what she said
here in court, is so seriously flawed that without her, no
reliable evidence can place Mr. Johnson behind the gun.
At best Ms. Evans tenuously places him behind the
wheel of the vehicle months later. But her identification
doesn't go anywhere near placing him into holding the gun
and committing the crime.  Again, without her, there's no ID
whatsoever of Mr. Johnson. Judge, we would argue that that is
extremely weak and circumstantial. There's … a significant

> reasonable hypothesis of innocence that flows directly
> from the State's lack of evidence in a case like this,
> and we feel that based on the fact that all they have is that
> few pieces of testimonial evidence, no concrete evidence
> beyond that, and that they are so significantly flawed,
> this case cannot proceed at this point.

ECF No. 20-3 at 108.

The court denied the motion, noting that defense counsel would have another opportunity at the conclusion of the trial. *Id.* at 109.  "As to the motion that you've made now at the judgment of acquittal stage, I'm going to deny that. I find that there's sufficient credible evidence which would allow the jury at this point, viewing the case in a light most favorable to the State of Florida, to return a verdict of guilty on the charge."  *Id.* at 109.

After the defense rested, counsel renewed its motion for judgment of acquittal:

> At this time the defense would renew all objections. We'd also
> renew our motion for judgment of acquittal. Judge, I think this is
> something that certainly wasn't testified to nor could it have
> been from the witnesses presented, but I hope that the Court is
> aware of the flaws inherent in eyewitness testimony,
> eyewitness identifications, and that the State's evidence is
> strictly based on that, based on eyewitness identifications that
> originate with Mireya Evans, a woman whose story was so
> wildly all over the map that it could not be deemed reliable by
> any trier of fact. That goes to Jason Hempel who testified that
> Broderick Johnson was the person holding the gun. I would
> again argue that there's no evidence other than the eyewitness
> testimony. Based on that alone, perhaps that wasn't enough for
> the Court to grant this motion. However, I think based on the
> presentation that the defense has made showing what we

would consider an extremely solid alibi, placing the defendant
reliably, including the phone data, including witness testimony,
across town for the entire hour in which this incident took place,
also based on the fact that even though there was a gap of nine
minutes, which Ms. Hunt kept referring to, that it would be
nearly impossible for anybody to go from where he was located
out by the Oaks Mall even, in fact, east of it 62nd all the way to
downtown Gainesville and back to make the second phone call
at 10:34, that there's just no way that this man did this
crime that he's charged with. So we'd renew that motion
at this point in time and ask the Court to grant it as
such.

ECF No. 20-4 at 185-86.

The court denied the motion, stating:

This is a classic fact question for a jury. The defense is not
relying upon a reasonable hypothesis of innocence based upon
the State's facts; they're interjecting an entire separate side of
the case with their own facts into it that do not rely or mesh with
the State's facts at all.  So we're not in the box of the
reasonable hypothesis of innocence and the State having to
disprove it; I think we simply have a joinder of fact here as to
whether or not the State's witnesses believed the eyewitness or
whether or not the defense witness who's providing some
evidence of alibi is believed.  So I believe in that respect it is a
classic jury question, so I'm going to deny your motion for a
judgment of acquittal or directed verdict and allow the case to
go to the jury.

ECF No. 20-4 at 189.

Defense counsel's motions for acquittal do not fall outside the range

of competence demanded of attorneys in criminal cases. And, because the

trial court denied both motions, first finding that the State's case standing

alone was sufficient to support a guilty verdict, and second finding that

Petitioner's alibi testimony presented a "classic fact question" as to which of the parties' witnesses the jury would believe, *see id.*, Petitioner cannot demonstrate a reasonable probability that the trial court would have acquitted him.  Petitioner, therefore, has failed to establish prejudice.

Petitioner has failed to show that the state court's rejection of his ineffective assistance claim on Ground 5 is contrary to, or an unreasonable application of *Strickland.*  Petitioner, therefore, is not entitled to federal habeas relief.

### Ground 6: IAC for Failure to Preserve Issue for Appeal

Petitioner's sixth ground for ineffective assistance is based on the argument that trial counsel failed to preserve the "issue of whether the state proved all of the elements of the carjacking with a firearm offense beyond a reasonable doubt."  ECF No. 22 at 13.[16] "[W]hen a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a

---

[16] By moving for a JOA, counsel did preserve "sufficiency of the evidence" as an issue for appeal.  In his Petition alleging ineffective assistance of appellate counsel, Petitioner conceded that his trial counsel properly preserved sufficiency of the evidence for appellate review but argued that appellate counsel was ineffective for failing to raise sufficiency on appeal.  The First DCA denied that Petition on the merits.  ECF No. 20-17 at 8-9 (petition), ECF No. 20-18 at 1 (First DCA PC decision).

reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." *Davis v. Sec'y for the Dep't of Corr.,* 341 F.3d 1310, 1316 (11th Cir. 2003) (citations omitted).

During the postconviction proceedings, Petitioner alleged that "the evidence presented at trial was insufficient to support a conviction for Carjacking with a Firearm," ECF No. 20-13 at 78, not that trial counsel failed to preserve the issue. *Id.* The postconviction court concluded that the claim was really a challenge to the sufficiency of the evidence, which was procedurally barred. *Id.*

Reviewing the procedural history of Petitioner's appeal of his conviction and sentence, Petitioner fails to demonstrate that "but for" counsel's failure to preserve the issue for appeal, there was a reasonable probability that the reviewing court would have reversed. Furthermore, defense counsel preserved the issue for appeal by moving for JOA, which Petitioner conceded in his Petition alleging ineffective assistance of appellate counsel. ECF No. 20-17 at 8-9. The First DCA denied that Petition on the merits. ECF No. 20-18 at 1.

On June 17, 2011, Petitioner appealed his conviction and sentence to the First DCA. ECF No. 20-1 at 86. On October 24, 2011, defense counsel

filed an *Anders*[17] brief with the court, stating that counsel could not find any

appealable issues as to Petitioner's conviction or sentence, ECF No. 20-7

at 1-23, and asked the court to allow Petitioner to proceed on appeal *pro*

*se*. *Id.* On November 2, 2011, the appellate court allowed Petitioner to file a

*pro se* brief. ECF No. 20-8.  Despite having an opportunity to do so

Petitioner did not file a *pro se* brief.  On July 11, 2012, the reviewing court

issued a *per curiam* opinion, affirming Petitioner's conviction and sentence.

ECF No. 20-10 at 1. Petitioner moved for rehearing on July 27, 2012, *id*. at

2-7, which the court denied on August 31, 2012. *Id.* at 8. Mandate issued

on September 19, 2019.  *Id. at* 10. Petitioner's argument on this issue fails

for the following reasons.

First, Defense counsel's filing of the *Anders* brief cannot give

rise to Petitioner's ineffective assistance claims because the filings

are not outside the range of competence demanded of attorneys in

criminal cases.  "An appellate lawyer who files an *Anders* brief, even

if marginally compliant, does not render ineffective assistance." *See*

*Hall v. United States,* 2019 U.S. Dist. LEXIS at *22 (citing *Grubbs v.*

---

[17] *Anders v. California*, 386 U.S. 738, 741-42 (1967). Under *Anders*, if a criminal defendant insists on pursuing an appeal, but appointed counsel believes the appeal to be without merit, counsel must thoroughly review the record and the law, file a brief detailing that review, explain why an appeal would be frivolous, and move to withdraw as counsel. Faced with an *Anders* brief, the appellate court undertakes its own review.

*Singletary*, 120 F.3d 1174, 1177 (11th Cir. 1997) ("Although the brief may have only marginally complied with *Anders*, it nonetheless complied. We conclude, therefore, that the district court erred in granting Grubbs relief on his claim of ineffective assistance of counsel in failing to comply with *Anders*")).

Second, Petitioner was afforded the opportunity to file a *pro se* brief on appeal and could have raised all of the issues he thought he should prevail on at that time, but he failed to do so.

Third, the court of appeals reviewed Petitioner's conviction and sentence and affirmed. Petitioner has not demonstrated that but for counsel's performance, there was a reasonable likelihood of a more favorable outcome on appeal. Petitioner simply cannot establish any prejudice here.

Petitioner has thus failed to show that the state court's rejection of his ineffective assistance claim on Ground 6 is contrary to, or an unreasonable application of *Strickland*.  Petitioner, therefore, is not entitled to federal habeas relief.

### *Ground 7: IAC for Details of Prior Convictions*

Petitioner's seventh ground for ineffective assistance is based on the argument that trial counsel should not have asked Petitioner about the

nature of his two prior convictions because it prejudiced the jury's credibility

assessment of him.  ECF No. 22 at 14.  The postconviction court found the

trial strategy "reasonable" as follows:

> [C]ounsel reasonably expected that [Petitioner] was going to be
> impeached by the State by means of questioning about his prior
> convictions, 'and he was following the common practice of
> disclosing the convictions on direct examination in order to
> deprive the state of the opportunity to impeach, to appear
> forthcoming to the jury,' and to emphasize that: (a) Defendant's
> two prior convictions were over 10 years old; (b) the convictions
> were for relatively minor offenses; (c) the convictions were the
> result of pleas, not trials; and, (d) Defendant was only 18-19
> years old at the time of the prior convictions, versus being 30
> years old at the time of the instant offense.  *McRae v. State*,
> 510 So.2d 874, 877-78 (Fla. 1987) (citing *Lawrence v. State*,
> 500 So.2d 519, 520 (Fla. 1986) ("anticipatory rehabilitation" is
> permissible to "take the wind out of the sails" of the anticipated
> impeachment)).

> ECF No 20-13 at 80.

In addition to finding no error by counsel, the postconviction

court also found that Petitioner failed to establish prejudice. *Id.* The

court noted that the State only made two passing comments about

the convictions during closing argument.

> Given the fact that the jury would have heard about the two
> prior convictions during cross-examination, [Petitioner] fails to
> show that counsel's inquiry into the nature of those convictions
> was so prejudicial that there is a reasonable probability this
> information affected the outcome of the trial, especially given
> the fact that Defendant's behavior at trial was more of a focus
> for the State during its closing than his prior convictions.

*Id*. at 80-81.

Where as here in a § 2254 proceeding, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Mirzayance,* 556 U.S. at 123 (quoting *Schriro*, 550 U.S. at 473). The state court has wide latitude to reasonably determine that a defendant has not satisfied this doubly deferential *Strickland* standard. *See Mirzayance*, 556 U.S. at 123.

Petitioner has thus failed to show that the state court's rejection of his ineffective assistance claim on Ground 7 is contrary to, or an unreasonable application of *Strickland*.  Petitioner, therefore, is not entitled to federal habeas relief.

### Ground Eight: IAC for Failure to Investigate Prior Statements

Petitioner's final claim for ineffective assistance of counsel is based on the argument that trial counsel "failed to investigate and or interview the victim and the Detective 'further' with the police report that contradicts both witnesses conflicting testimony or identification." ECF No. 22 at 18.

> Where victim testified that he selected the Petitioner out of the first photo spread, and that no one in the second photo spread resembled the person who carjacked him. The police report

written by the Detective demonstrates that the victim selected a person from the second photo spread.

*Id.*

Essentially, Petitioner complains that defense counsel failed to impeach both the victim and the detective involved in the photo line-up with the police report that allegedly contradicted their testimony. The postconviction court, citing to the trial transcript, concluded that "[d]uring trial, the victim testified that he immediately recognized [Petitioner] in the photo line-up; and, testified that he recognized [Petitioner] in the courtroom as the person who carjacked him. . . . Det. Robinson testified similarly. . . To the extent that there was some inconsistency in the victim's testimony, defense counsel impeached the victim as to that inconsistency."  ECF No. 20-13 at 85-86.

The postconviction court went on to analyze whether law enforcement had used any unnecessarily suggestive procedure in obtaining the victim's out-of-court identification via the photo line-up and concluded that it did not.  *Id.*

> In addition, the victim was positive of his identification of [Petitioner] as the perpetrator. The victim's 9-1-1 call supports the fact that he immediately relayed identifying factors of the perpetrator immediately after the offense occurred…. Thus, even if trial counsel had challenged the out-of-court identification by filing a motion to suppress, the motion to suppress would have been denied.

ECF No. 20-13 at 87.

The court thus found the claim "without merit" because Petitioner "fail[ed] to show either error by counsel or prejudice." *Id.*

Petitioner has thus failed to show that the state court's rejection of his ineffective assistance claim on Ground 8 is contrary to, or an unreasonable application of *Strickland.* Petitioner, therefore, is not entitled to federal habeas relief.

## **Certificate of Appealability**

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that the amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 5, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 3rd day of August 2021.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES[18]

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party**

---

[18] Upon review of the Florida DOC online inmate locator, it appears that Petitioner is currently confined at the Hardee Work Camp. The Clerk is directed to forward a copy of this Report and Recommendation to his address of record with the Court and to the Hardee CI.

fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.